IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STACIE B.,

        **Plaintiff,**

  v.                                 Civil Action 2:21-cv-4650
                                        Judge James L. Graham
                                        Magistrate Judge Jolson

COMMISSIONER OF
SOCIAL SECURITY,

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Stacie B., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** the case under Sentence Four of § 405(g).

**I.    BACKGROUND**

Plaintiff filed her applications for DIB and SSI on August 22, 2019, asserting disability beginning January 1, 2018, due to Bi-polar disorder, social anxiety, and Post-Traumatic Stress Disorder (PTSD). (Tr. 393–406, 416). After her applications were denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing before ultimately denying Plaintiff's applications on January 13, 2021. (Tr. 96–118, 59–79). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final for purposes of judicial review. (Tr. 1–9).

Next, Plaintiff filed this action. (Doc. 1). As required, the Commissioner filed the administrative record, and the parties briefed the issues. (Docs. 8, 11, 13, 14).

A. **Relevant Statements**

The ALJ summarized Plaintiff's hearing testimony:

[Plaintiff] testified that she had not worked since 2017. She reported that she left her home only approximately twice per month. She stated she had a hard time dealing with people, and she had panic attacks when she left her home. She indicated that she stayed in her bedroom 95 percent of the time and reported that she had panic attacks around her family members, but [Plaintiff] advised that her panic attacks lasted only a few seconds.

(Tr. 69).

B. **Relevant Medical History**

The ALJ summarized Plaintiff's medical records as to her mental health impairments:

[A] treatment note dated April 2018 from her primary healthcare provider shows a diagnosis of anxiety (Exhibit 6F). She indicated that when she became upset or stressed[,] she experienced panic, despite the use of prescribed medication. A treatment note dated August 2018 from Cedar Ridge Behavioral Health Solutions shows she was required to attend counseling, per condition of probation, due to testing positive for amphetamines (Exhibit 7F). [Plaintiff] stated it was a false positive and denied addiction. She endorsed anxiety, racing thoughts, difficulty making decisions, and problems with concentration and processing thoughts. She advised that she avoided crowds, people, public places, and family events. On mental status evaluation, her mood was normal. Attention and concentration were normal, simple calculations and serial sevens were accurate, and long and short-term memory were intact. Her fund of knowledge was normal, judgment and insight were intact, and there was no evidence of hallucinations. Diagnoses included social anxiety disorder, generalized anxiety disorder, bipolar I disorder, and amphetamine-type substance use disorder, mild. [Plaintiff] initially declined counseling but later started attending counseling at the request of her parole officer.

Treatment notes from May 2019 reflect problems with isolation; difficulty trusting others; problems making decisions, thinking, and remembering daily events; distractedness; and intrusive and racing thoughts (Exhibit 7F). On mental status evaluation, she reported that she started experiencing visual and auditory hallucinations after being in jail. She indicated that she was released from jail the previous month. Although she had a depressed and anxious mood, she was cooperative. She had good intellectual functioning, fair judgment, and good insight. The mental healthcare provider diagnosed major depression and prescribed appropriate medication. The evidence shows numerous subsequent mental status evaluations, which were essentially normal. In fact, she later denied hallucinations, and her mood was stable. In addition, [Plaintiff] completed a finance skills lesson regarding bill paying.

> Although treatment notes from early 2020 show [Plaintiff] endorsed increased stress due to her father's terminal illness, mental status findings remained normal (Exhibit 7F). She denied hallucinations and paranoia. The healthcare provider stated her mood was stable. Intellectual functioning, insight, and judgment were average. She subsequently reported worsening social anxiety and indicated that she did not leave her home most days (Exhibit 11F). However, her mood remained stable, and the mental status findings were normal. A recent treatment note shows that [Plaintiff] denied any history of substance abuse but was prescribed Hydrocodone for other health issues. Her parole officer voiced concerns about her potentially abusing this medication, and she was now required to provide a urine drug screen to ensure compliance. While she reported increased anxiety and indicated that she had to pull over three times on the drive to the appointment, mental status findings were normal. There was no indication of significant mental health symptoms, other than increased anxiety at times, which is in contrast to [Plaintiff]'s testimony.

(Tr. 70–71).

Then, the ALJ summarized the medical source opinions as to Plaintiff's mental health impairments:

> In November 2020, Brandi Stillion, L.S.W., opined [Plaintiff] was seriously limited in numerous areas regarding mental abilities and aptitudes needed to do unskilled work, semiskilled and skilled work, and particular types of jobs (Exhibit 10F). Additionally, she stated [Plaintiff] would be absent from work more than four days per month. While Ms. Stillion is not an acceptable medical source and this is not a medical opinion, this opinion was considered. Regardless, there is nothing in the record to support the severity of these limitations (Exhibits 7F and 11F).
>
> State agency psychological consultant Erika Gilyot-Montgomery, Psy.D., opined in December 2019 that [Plaintiff] was able to carry out simple tasks (Exhibits 1A and 2A). She stated she was able to concentrate, persist, and keep pace for simple tasks with brief, superficial interaction with others. In addition, she advised that she was limited to routine tasks and low workplace pressures consistent with entry-level work. In April 2020, State agency psychological consultant Paul Tangeman, Ph.D., opined [Plaintiff] was able to maintain attention sufficiently to complete simple one to two-step tasks. He reported that she was limited to occasional contact with co-workers and supervisors, and only incidental contact with the public. She advised that she was able to make simple decisions and deal with occasional changes in routine, with no fast[-]paced tasks or strict production quotas. In addition, Dr. Tangeman stated variable paced tasks with end of day production quotas would be acceptable. The opinion of Dr. Gilyot-Montgomery is found to be unpersuasive, as the mental status findings throughout the record do not support a finding that [Plaintiff] would be limited to only "superficial" contact (Exhibits 7F and 11F). The opinion of Dr. Tangeman is found to be more persuasive based on

3

> [Plaintiff]'s many good mental status evaluations. Although mental status findings were normal, the record also shows problems with decision-making and concentration. In addition, [Plaintiff] does seek ongoing treatment, which appears to be driven by parole requirements. Finding such limitations are viewing the evidence in the light most favorable to [Plaintiff].
>
> In Exhibit 4F, a provider opined that [Plaintiff] could return to work with no restrictions. A statement about returning to work is not a medical opinion to be evaluated. However, the undersigned finds the statement about [Plaintiff] having no restrictions to be unpersuasive as it is not supported by or consistent with the evidence discussed herein, particularly the imaging of the lumbar spine and the left knee, physical examination findings, and mental status findings (Exhibits 5F-7F, 9F, and 11F).

(Tr. 71–72).

### C. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirement through December 31, 2022. (Tr. 65). She has not engaged in substantial gainful employment since January 1, 2018, the alleged onset date. (*Id.*). The ALJ also determined that Plaintiff has the following severe impairments: degenerative disc disease, osteoarthritis of the left knee, obesity, generalized anxiety disorder, social anxiety, bipolar disorder, depressive disorder, and substance abuse. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 66).

The ALJ assessed Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she is able to operate foot controls with the left foot frequently. She is able to climb ramps and stairs, balance, stoop, kneel, and crouch frequently. She is able to climb ladders, ropes, and scaffolds occasionally. She is limited to occasional work at unprotected heights and around heavy or hazardous machinery. She is able to operate a motor vehicle occasionally. She is able to work in vibration frequently. [Plaintiff] is able to perform simple, routine tasks and to make simple, work-related decisions. She is able to interact with supervisors and co-workers occasionally. She should have no interaction with the public, except incidentally. Work should not require collaborative teamwork to accomplish its essential functions. [Plaintiff] needs a low stress work environment, defined as no greater than occasional decision-making required, no greater than

4

occasional changes in the work setting, and no fast-paced production requirements. (Tr. 68).

As for the allegations about the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ found that Plaintiff's "depression, and anxiety are inconsistent with . . . [the] mental status findings." (Tr. 69).

The ALJ relied on testimony from a Vocational Expert ("VE") to determine that Plaintiff was unable to perform her past relevant work as a house cleaner. (Tr. 72). Further, the ALJ decided that given Plaintiff's age, education, work experience and RFC, she was able to perform work that existed in significant numbers in the national economy, such as a dishwasher, groundskeeper/parks, or a cleaner/hospital. (Tr. 73). Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since January 1, 2018. (Tr. 74).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes*

*v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

In her Statement of Errors, Plaintiff contends that the ALJ misclassified and then failed to properly evaluate the medical opinion provided by her therapist, Brandi Stillion, L.S.W. (Docs. 11, 14). The Commissioner counters that the ALJ properly found the opinions of the state agency doctors more persuasive and accounted for their limitations in the residual functional capacity. (Doc. 13).

Upon review, the Undersigned concludes that the ALJ improperly evaluated Ms. Stillion's opinion. Ms. Stillion opined that Plaintiff's social anxiety causes significant distress; that Plaintiff is seriously limited in several areas of mental abilities and aptitudes needed to do unskilled work, semiskilled work, and skilled work; and that Plaintiff would miss more than four days of work per month on average. The ALJ incorrectly concluded that the opinion was not a medical opinion. Because of this threshold error, he did not properly consider the opinion; specifically, he did not discuss supportability and consistency. Thus, the RFC is not supported by substantial evidence, and remand is recommended to allow the ALJ to properly consider this medical opinion.

### A. Definition of Medical Opinion

The ALJ concluded that Ms. Stillion did not give a medical opinion because she is not an acceptable medical source. (Tr. 71 ("Ms. Stillion is not an acceptable medical source and this is not a medical opinion . . . .")). Though Ms. Stillion is not an "acceptable medical source," she is a "medical source." So her opinion is a "medical opinion."

Plaintiff filed her application after May 23, 2017, so it is governed by the relatively new regulations describing categories of evidence. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (2017). The regulations define a medical opinion as "a statement from a medical source about what you

6

can still do despite your impairment(s) . . . ." 20 C.F.R. § 404.1513(a)(2). A medical source is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law." 20 C.F.R. § 404.1502(d). As a licensed social worker, Ms. Stillion's opinion fits the definition. *See, e.g.*, *Morris v. Saul*, No. 119CV01588RDMGBC, 2021 WL 3889555, at *6 (M.D. Pa. Jan. 4, 2021) ("While licensed clinical social workers and clinical mental health counselors are not 'acceptable medical sources,' under the new applicable regulations, they are 'medical sources' who can render 'medical opinions' for consideration of a claimants' disability."); *Kimberly W. v. Kijakazi*, No. 6:20-CV-925 (DJS), 2022 WL 561665, at *3–4 (N.D.N.Y. Feb. 24, 2022); *John W. v. Kijakazi*, No. 5:20-CV-01180 (BKS), 2022 WL 768672, at *15 n.12 (N.D.N.Y. Mar. 14, 2022).

Notably, the prior regulations defined a medical opinion as a statement from an "acceptable medical source," rather than just a "medical source." *See* 20 C.F.R. § 404.1527(a)(1). An acceptable medical source is "a medical source who is a highly educated practitioner" such as a physician, psychologist, optometrist, podiatrist, speech-language pathologist, audiologist, Advanced Practice Registered Nurse, or Physician Assistant. 20 C.F.R. § 404.1502(a). Ms. Stillion is not an acceptable medical source. It appears the ALJ applied the old regulations and concluded that because Ms. Stillion is not an acceptable medical source, that her opinion was not a medical opinion at all. This was error because Plaintiff's application is governed by the relatively new regulations, not the rescinded ones that would have treated Ms. Stillion's opinion as not a medical one.

### B. Standard for Evaluating Medical Opinions

Because Ms. Stillion's opinion is in fact a medical opinion, the ALJ was required to articulate how it was considered when assessing the RFC under the regulations. *See* 20 C.F.R. § 404.1520c, 20 C.F.R. § 416.920c.

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in his or her case file. *Id. See also* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017).

The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from the claimant's medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). When

evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).

Thus, the role of the ALJ is to articulate how he considered medical opinions and how persuasive he found the medical opinions to be. *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). The role of the Court is not to reweigh the evidence, but to make sure the ALJ employed the proper legal standard by considering the factors and supported the conclusion with substantial evidence. *Id.*, at *14.

  C. The ALJ's Evaluation of Ms. Stillion's Opinion

The ALJ did not properly evaluate Ms. Stillion's opinion because he did not sufficiently explain supportability and consistency.

The regulations "require that the ALJ provide a coherent explanation of his reasoning." *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *4 (E.D. Mich. Aug. 13, 2021) (quoting *Lester v. Saul*, No. 20-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). A minimum level of articulation is needed to provide sufficient rationale for a reviewing court. *Id.* (quoting *Warren I. v. Comm'r of Soc. Sec.*, No. 20-

9

495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021)). An ALJ's failure to meet this minimum level of articulation frustrates the court's ability to determine whether a determination is supported by substantial evidence. *Id.* (quoting *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021)).

When evaluating the opinion of Ms. Stallion, the ALJ said:

> In November 2020, Brandi Stillion, L.S.W., opined the claimant was seriously limited in numerous areas regarding mental abilities and aptitudes needed to do unskilled work, semiskilled and skilled work, and particular types of jobs (Tr. 1945–46). Additionally, she stated the claimant would be absent from work more than four days per month. While Ms. Stillion is not an acceptable medical source and this is not a medical opinion, this opinion was considered. Regardless, there is nothing in the record to support the severity of these limitations (Tr. 1504–1856, 1947–86).

(Tr. 71 (citations updated to Tr. format)). Here, the ALJ did not sufficiently discuss supportability and consistency.

When assessing supportability, an ALJ must evaluate the objective medical evidence and supporting explanations presented by a medical source to support the medical opinion. 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). Said differently, an ALJ should evaluate the strength of evidence on which the medical source based his or her opinion. And then, the ALJ must articulate his or her rationale for finding the opinion supported or unsupported. *See Hardy*, 2021 WL 3702170, at *4 (finding the regulations require the ALJ to provide a "coherent explanation of his reasoning").

Here, the ALJ failed to address supportability in any meaningful way. While the ALJ uses the word "support," he does not engage with the relative strength of the evidence on which Ms. Stillion based her opinion. For example, it appears that Ms. Stillion based her opinion in part on the therapy progress notes (Tr. 1947–86) from Cedar Ridge Behavioral Health Solutions which she signed. These records indicate that Plaintiff felt nervous, anxious, or on edge nearly every

10

day. (Tr. 1949). Plaintiff, on a scored generalized anxiety test, was categorized as having severe anxiety. (*Id.*). The records describe Plaintiff's daily struggles due to anxiety, such as difficulty driving (Tr. 1947), isolation (Tr. 1950), physical symptoms like heart palpitations and difficulty breathing (Tr. 1955), and trouble being around too many people (Tr. 1969). The ALJ fails to evaluate the extent to which this objective medical evidence supports Ms. Stillion's opinion. The ALJ mentions these records but fails to explain, even at a high level, why Ms. Stillion's opinion is not supported by these records. It seems plausible that these records, which detail Plaintiff's struggles with anxiety, support Ms. Stillion's opinion that Plaintiff's social anxiety causes significant distress. So further elaboration on why Ms. Stillion's opinion is unsupported is needed to facilitate meaningful review.

The ALJ also failed to explain his evaluation of consistency. When assessing consistency, the ALJ should evaluate the extent to which the opinion is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2). Said differently, the ALJ must evaluate whether the opinion is of a piece with the entire record and then articulate the rationale for his or her conclusion. The ALJ failed to provide such articulation here.

The ALJ said, without explanation, that "there is nothing in the record to support the severity of these limitations." (Tr. 71 (citing Tr. 1504–1856, 1947–86)). The ALJ fails to explain how his citation to the record substantiates this point. On review, the Undersigned is unable to discern how the ALJ reached the conclusion that Ms. Stillion's opinion is inconsistent with the record, even when reviewing the records cited by the ALJ.

Ms. Stillion opined that Plaintiff's social anxiety has caused significant distress and marked that she is "seriously limited" in several areas related to her mental ability to do unskilled, semiskilled, and skilled work. (Tr. 1945–46). "Seriously limited" was the middle option on a

11

scale ranging from "unlimited or very good," "limited but satisfactory," "seriously limited," "unable to meet competitive standards," and "no useful ability to function." (*See id.*). To support the discounting of Ms. Stillion's opinion the ALJ cited, in part, to Tr. 1504–1846. But the ALJ did not elaborate on why these records bolster his determination. (*See* Tr. 71). When the Undersigned looks at the ALJ's use of these records elsewhere in the opinion, it remains unclear how the ALJ used these records to support his consistency determination. (*See* Tr. 67–71).

Regarding these records, Tr. 1504–1846, the ALJ said "treatment notes consistently show problems with social anxiety and isolation []" (Tr. 67 (citing Tr. 1504–1846)), "treatment notes consistently reveal she had problems with concentration and was easily distracted due to her symptoms of anxiety []" (*id.*), "[t]reatment notes show her insight and judgment were intact[] (*id.*), "[t]reatment notes reflect the claimant had problems with processing thoughts, difficulty making decisions, problems with concentration, and was easily distracted due to her symptoms of anxiety []" (Tr. 68 (citing Tr. 1504–1846)), "[t]reatment notes from May 2019 reflect problems with isolation; difficulty trusting others; problems making decisions, thinking, and remembering daily events; distractedness; and intrusive and racing thoughts []" (Tr. 70 (citing Tr. 1504–1846)), and "[a]lthough treatment notes from early 2020 show the claimant endorsed increased stress due to her father's terminal illness, mental status findings remained normal []" (Tr. 71 (citing Tr. 1504–1846)). Based on these statements, it is not clear why the ALJ concluded that Ms. Stillion's opinion is not consistent with these records. The ALJ's statements regarding these records are a mixed bag and, at the very least, acknowledge Plaintiff's struggles due to anxiety. It seems plausible that these records are consistent with Ms. Stillion's opinion; thus, further elaboration on why Ms. Stillion's opinion is inconsistent with the record is needed to facilitate meaningful review.

12

The Commissioner responds by arguing that substantial evidence supports the fashioned RFC. (*See generally* Doc. 13). In other words, the Commissioner wants the Court to look past the error and find that the RFC otherwise has support. But the ALJ's "failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009)). While there may be evidence in the record upon which the ALJ could have relied to find Ms. Stillion's opinion unsupported and inconsistent—and thus ultimately unpersuasive—the ALJ must still provide a "coherent explanation of his reasoning." *Hardy*, 2021 WL 3702170, at *4. Because he has failed to provide such an explanation, substantial evidence does not support the determination that these opinions were unpersuasive nor the ultimate RFC determination.

At base, the ALJ misclassified Ms. Stillion's opinion and did not evaluate it as a medical opinion in accordance with the regulations. Because the ALJ did not comply with the regulations, remand is recommended to allow a proper consideration of Ms. Stillion's opinion.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and Administrative Law Judge under Sentence Four of § 405(g).

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting

authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: June 2, 2022                              /s/ Kimberly A. Jolson
                                                KIMBERLY A. JOLSON
                                                UNITED STATES MAGISTRATE JUDGE